Hunt, J.,
delivered the opinion of the court:
The claimants, through their agent, one Hollingsworth, made a parol contract with the government for the employment of the steamer Hattie, in the month of March, 1866, at Mobile, Ala. The steamer was to proceed down Mobile Bay, and, with the assistance of a Treasury aid and a squad of soldiers taken on board, was to secure and recover certain bales of cotton claimed to belong to the government from a stranded vessel that had been wrecked' there. The government agreed to pay $6 per bale for every bale which should be recovered and brought by the Hattie to Mobile.
Under this agreement the Hattie went down the bay, and returned to Mobile with 182 bales of cotton which she had rescued.
*444 The claimants’ agent in Mobile at once took possession of the cotton, caused it to be stored in liis name, and continued to hold it, asserting a lien upon it for salvage. It was shortly after seized iuider some legal proceedings to which the claimants became parties. The nature of these proceeding is not explained;- but it is shown that the claim now before this court was then passed upon by some other tribunal, and that the cotton Avhich had been rescued by the Hattie never was delivered up to the defendants, but passed into other hands. No notice of all this is proved to have been given the officers and agents of the government. This suit is brought to recover $1,092 for securing and transporting 182 bales of this cotton, at $0 per bale.
Looking to the language of the contract as found by the court, the obligation of the claimants was to rescue certain cotton, and to receive an agreed price “for every bale which should be recovered and brought by the Hattie to Mobile.” A reasonable interpretation of this obligation includes, obviously, the delivery or tender of the cotton to the defendants or their agents, and not a delivery to others. It would be against reason to infer that no delivery was contemplated. It is no less so to hold that a delivery to any one but the defendants was intended. Such a delivery forms an incident tacitly implied in every such contract. In contractibus tacite veniunt ea, quce sunt moris et con-suetudinis.
The claimants in their petition virtually admit the correctness of this view, and seek to exonerate themselves from the liability they were under to deliver the cotton to the defendants, by alleging that it “was taken out of their possession under legal proceedings to which the United States were parties, and, without any default or neglect on the part of their agent, awarded and delivered to private claimants.” But beyond the fact that the cotton was delivered to others and not to the defendants, and that this was done by some sort of legal process, they offer no proof. Th e character of the legal proceedings — who were the actual parties to them, what judicial tribunal entertained jurisdiction of the matter — they have failed to show by any legal evidence. If such proceedings established their allegations, the claimants might have obtained and filed in evidence an exemplification of the record of the court in which they were had. Such a judicial record, if in existence, constituted the best and only *445 admissible proof of tlie facts the claimants rely upon for the non-delivery of the cotton and for their claim to compensation under the contract. This court would then be able to examine into the jurisdiction of the tribunal said to have acted in the matter to know who were parties to the record, and to determine whether the nature and effect of the judgment and decrees invoked be such as the claimants allege.
In the case of Lane v. The United States (7 C. Cls. R., 98), appealed from this court, the Supreme Court held that, “How far a decree against the government in a court of admiralty concludes it in another suit in another court cannot be determined, unless the record of the court of admiralty be before the Supreme Court on appeal.”
But the claimants now contend, in the supplemental brief filed since the argument, that the agency aid who went on the Hattie was cognizant of her arrival and the discharge of her cargo at Mobile. Such knowledge they insist is notice, and became equivalent to a delivery of the cotton to the defendants. It is an answer to this argument to say that the aid and his squad of soldiers were sent on the vessel to secure the cotton and enforce its capture. They had no authority to receive it on its arrival it Mobile; besides, they were not asked by the claimants to do so. There is manifestly an inconsistency in the claimants’ present position that they made a constructive delivery of the cotton, and the allegation of the petition that they made no delivery of it in consequence of legal proceedings.
Much has been said as to the title of the claimants to the steamer. In our opinion this subject is wholly irrelevant. It is immaterial whether the claimants were the owners or charterers of the vessel or held her by any other tenure. They were in possession of her, and their possession was unchallenged by any rival title. They contracted for her employment by the government; and had they fully performed the service they undertook, they would have the right to recover the stipulated reward. As they have failed to show such performance, it is ordered, adjudged, and decreed that their petition be dismissed.
Drake, Oh. J., was absent when this case was heard and took no part in the decision.